Filed 8/19/25  A.C. v. Superior Court CA2/6

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| A.C.,<br><br>    Petitioner,<br><br>v.<br><br>SUPERIOR COURT OF THE COUNTY OF SAN LUIS OBISPO,<br><br>    Respondent<br><br>COUNTY OF SAN LUIS OBISPO DEPARTMENT OF SOCIAL SERVICES,<br><br>    Real Party in Interest. | 2d Civ. No. B345778<br>(Super. Ct. No. 24JD-00033)<br>(San Luis Obispo County) |

A.C. (Mother) filed a petition for extraordinary writ (Cal. Rules of Court, rules 8.452, 8.456) to challenge orders of the juvenile court after it granted a juvenile dependency petition

(Welf. & Inst. Code,[1] § 300); removed Mother's child, A.C., from her custody; terminated reunification services after 12 months; and set the case for a section 366.26 hearing. We conclude, among other things, that the court's findings are supported by substantial evidence and Mother has not shown error. We deny the petition.

FACTS

On March 5, 2024, the San Luis Obispo County Department of Social Services (DSS) filed a juvenile dependency petition. (§ 300, subd. (b)(1).) DSS alleged that Mother was unable to care for and protect her infant son and the child had to be "detained" and removed from Mother for his protection. Mother used methamphetamine and fentanyl during her pregnancy and that endangered the baby's health. Her child at birth tested positive for fentanyl and opiates. DSS reported that Mother has a "significant history of illegal activities associated with substance abuse."

The child was placed in a neonatal intensive care unit. He began to experience "withdrawal symptoms such as being tremulous and running hot." DSS determined the child was "in need of the protection of the Juvenile Court."

In an April 2024 jurisdiction/disposition report, DSS recommended that the juvenile court find that: 1) the allegations of the petition are true; 2) the child be declared a dependent of the court and remain in out-of-home care; and 3) Mother be offered reunification services.

The juvenile court followed the DSS recommendations. It found that the allegations of the petition were true and that the

---

[1] All statutory references are to the Welfare and Institutions Code.

child was a dependent of the court, and it ordered family reunification services for Mother.

In an October 2024 six-month status review report, DSS recommended that Mother continue to receive family reunification services. The court followed the DSS recommendation and granted Mother six more months of reunification services.

In December 2024, the child began a "trial visit" with Mother. But it was discovered that Mother was continuing to use drugs. She used a "cheating device" to falsify drug results so they would appear to be negative.

In an April 2025 status review report, DSS recommended that Mother's family reunification services be terminated and that the juvenile court set the case for a section 366.26 hearing. Mother was removed from her residential treatment program on January 21, 2025. She "struggled with being sober." She continues to use drugs. DSS determined that Mother "does not understand [the] severity of her continued relapses." She began using fentanyl on November 28, 2024. On January 2, 2025, DSS placed the child "back at his previous Foster Placement." On February 20, 2025, the social worker advised Mother that she was "not in compliance with her case plan." DSS determined that Mother "failed to show that she can be a safe and sober parent for [the child]."

At the 12-month permanency hearing, Mother testified the "[l]ast day [she] used drugs" was February 14, 2025. She acknowledged that she had a "recent positive test" on April 9th. She had "no idea" why that test result was positive. She testified she complied with her case plan. She had been "consistently" making her visits with her son. She was asked, "[D]oes your son

show you affection?" She responded, "Yes, he does." Mother said she was "using substances between March 6th and May 28th of 2024." She received "a year of reunification services." She was asked what she was asking for from the court. She responded, "I'm asking for an extension in my case so I can get some more clean time under my belt so I can continue with my services so I can continue to show that I am able to do this and I am the correct choice" for the child.

Social worker Samantha Brown testified that Mother has a substantial substance abuse problem. "[Mother's] time in sobriety hasn't been significant and she continues to relapse." She has a problem recognizing the "seriousness" of the sobriety issue and taking "accountability for her sobriety." Mother's child would face "a substantial risk of harm" if he were returned to Mother. Mother recently tested positive for methamphetamine and fentanyl. She had 12 positive drug tests between February 11 and March 7, 2025. The testing program that produced these results is reliable. Mother used "a cheating device for her tests earlier in the case."

Brown testified that Mother's drug and alcohol counselors have "expressed concerns" about Mother's "continued use of substances." They have determined that the testing Mother received is "reliable for their treatment purposes."

The juvenile court ruled that it would follow the DSS recommendations. It terminated reunification services because of Mother's "inability to meaningfully address the serious drug addictions" that she had. It found Mother has not shown "the capacity and ability to show" that she can "successfully meet the objectives of [her] treatment plan." It found Mother's testimony that she last used drugs on February 14th was not credible. The

court said, "I think the test results speak differently about that and I do give weight to that . . . ." It set a section 366.26 hearing.

## DISCUSSION

The juvenile court's duty for the dependent children under its jurisdiction is to make dispositions and placements in their best interests. (*In re Lauren R.* (2007) 148 Cal.App.4th 841, 855.) "When a child cannot be returned to the parent within the statutory time frame, the court is required to establish a permanent plan for the child and refer the case for a section 366.26 hearing." (*In re Ronell A.* (1996) 44 Cal.App.4th 1352, 1366.) The court may continue any required hearing if it is in the best interests of the child. (§ 352.)

### *Substantial Evidence*

We review the trial court's findings for substantial evidence. We draw all reasonable inferences in support of the judgment. We do not weigh the evidence, resolve evidentiary conflicts, or decide witness credibility. Those are matters exclusively decided by the trial court. (*In re R.T.* (2017) 3 Cal.5th 622, 633.)

Mother claims her evidence shows her compliance with her case plan and her "rehabilitation progress." But the issue is not whether some evidence supports Mother; it is whether substantial evidence supports the judgment. (*In re R.T., supra,* 3 Cal.5th at p. 633.)

Mother has not shown why the juvenile court could not reasonably rely on the DSS reports and the social worker's testimony showing that: 1) Mother did not comply with her case plan; 2) she recently used and tested positive for drug use multiple times; 3) her "time in sobriety hasn't been significant and she continues to relapse"; 4) she does not seriously recognize

and take accountability for her drug use problem; and 5) returning the child to Mother would pose a "substantial risk of harm" to the child.

Mother claims she testified that she last used drugs on February 14, 2025. But the trial court found her testimony was not credible and it was refuted by drug testing results. We do not decide witness credibility; that is exclusively decided by the trial court.

Mother appears to claim the DSS evidence about her positive drug tests was unreliable and the evidence about her relapses was given too much weight or contradicted by other evidence. But the juvenile court found the drug testing evidence was reliable and that finding is supported by the social worker's testimony. We do not weigh the evidence or resolve evidentiary conflicts. Mother has not shown the court's findings are not supported by substantial evidence.

## Additional Evidence

Mother has attached additional exhibits and documents. DSS objects and claims some of these documents are not part of the record in the trial court. A party may not for the first time on appeal raise issues and present documents that were never presented to the trial court to claim error. (*Johnson v. Greenelsh* (2009) 47 Cal.4th 598, 603.)

6.

DISPOSITION

The petition is denied.

<u>NOT TO BE PUBLISHED.</u>

GILBERT, P. J.

We concur:

YEGAN, J.

CODY, J.

Linda D. Hurst, Judge

Superior Court County of San Luis Obispo

_____

A.C., in pro. per., for Petitioner.

No appearance for Respondent.

Jon Ansolabehere, County Counsel, Nicole Radakovich, Deputy County Counsel, for Real Party in Interest.